SHADE *v.* STATE OF INDIANA.

BINGHAM *v.* STATE OF INDIANA.

[Nos. 24,577, 24,578. Filed November 5, 1925.]

1. INTOXICATING LIQUORS.—*Section 2 of the act of 1923 relat-
ing to stills and distilling apparatus did not make the fact
of registration constitute an exception to the crime defined in
the first section.*—Section 2 of the act of 1923 (Acts 1923 p.
107) relating to stills and distilling apparatus which provided
that "the possession of any still or distilling apparatus not
registered according to the provisions of the laws of the United
States shall be *prima facie* evidence that such possession was
for the purpose of manufacturing intoxicating liquor" did not
make the mere fact of registration a presumption of lawful
possession for a lawful purpose and thus create an exception
in the offense defined in the first section. p. 667.

2. INTOXICATING LIQUORS.—*Indictment or affidavit charging unlawful possession of still need not allege that it was not registered under U. S. laws.*—In a prosecution for having possession of a still under the law of 1923 (Acts 1923 p. 107), it was not necessary for the indictment or affidavit to allege that such still was not registered under United States laws, notwithstanding the provision of §2 of the act making possession of an unregistered still *prima facie* evidence that such possession was for the purpose of manufacturing intoxicating liquor. p. 667.

3. INTOXICATING LIQUORS.—*Affidavit charging unlawful possession of still in language of statute sufficient.*—An affidavit charging unlawful possession of a still substantially in the language of the statute is sufficient to withstand a motion to quash. p. 667.

4. CRIMINAL LAW.—*Search by officers for violation of law, after permission granted by owner of land, resulting in discovery of camp with liquor in process of manufacture not unreasonable or violation of constitutional rights.*—Where officers had been given permission by the owner of land to go thereon and search for violations of the prohibition law, a search of the premises without a warrant which disclosed a rude camp on the river bank in the midst of a dense thicket, accessible only to persons on foot, in which were found a few articles of furniture, eight gallons of whisky, six barrels of mash in process of fermentation and a still in operation with whisky running out of the coil, there being no house, hut, tent or other structure there, was not unreasonable or a violation of the constitutional rights of the occupants of said camp. p. 668.

5. CRIMINAL LAW.—*Where motion to suppress evidence was heard on conflicting testimony, appellate tribunal must adopt theory that will uphold trial court.*—Where motion to suppress evidence was heard on conflicting testimony, an appellate tribunal must adopt that theory of the testimony that will uphold the decision of the trial court. p. 669.

6. INTOXICATING LIQUORS.—*Evidence held sufficient to sustain conviction for unlawful possession of still.*—Evidence *held* sufficient to sustain conviction for unlawful possession of still under Acts 1923 p. 107. p. 671.

From Knox Circuit Court; *Thomas B. Coulter*, Judge.

John Shade and Edward Bingham were convicted in separate cases of unlawful possession of a still for the manufacture of intoxicating liquor, and they appeal. *Affirmed.*

*W. A. Cullop,* for appellants.

*U. S. Lesh,* Attorney-General, and *O. S. Boling,* for the State.

MYERS, J.—On December 6, 1923, each of the appellants in each of the above entitled causes was convicted of unlawfully and feloniously using and having in his possession, and under his control, on or about July 11, 1923, a still and distilling apparatus for the manufacture of intoxicating liquors, in violation of the laws of the state. Acts 1923 p. 107, §1. The above appellants were separately charged by affidavit filed on the same day, separately tried and separately convicted. The reasons in support of the motion to quash each affidavit, the rulings thereon, the evidence introduced and objections thereto, the court's rulings, and the assignments of error in each case are, for all practical purposes, the same. Hence, for the purpose of disposition in this court, these cases are hereby ordered consolidated.

The errors assigned challenge the rulings of the court on the motions to quash the affidavits, the motions to suppress evidence, and each motion for a new trial.

Appellants assert, in effect, that in law they are presumed to be innocent and unless the facts in the affidavits rebut this presumption, the motion to quash 1-3. must be sustained. They then insist that for any fact appearing in either of the affidavits, the stills charged to be in their possession may have been registered according to the laws of the United States, and if not, the affidavits should have so stated in order to repel the supposition of innocence. In this connection, they call our attention to §2 of the above act, which provides that: "The possession of any still or distilling apparatus not registered according to the provisions of the laws of the United States shall be prima facie

evidence that such possession was for the purpose of manufacturing intoxicating liquor." The only object of this provision is to prescribe a rule of evidence and a method of proof. It is no part of the definition of the offense, nor does it purpose to justify a person in the possession, control or use of a registered still for the manufacture of intoxicating liquor, in violation of law. It does not make the mere fact of registration a presumption of lawful possession for a lawful purpose, and a noted exception in the definition of the offense or the acts declared unlawful. The point thus made against the affidavits must be denied. *Jenkins* v. *State* (1919), 188 Ind. 510, 124 N. E. 748, and cases there cited; *James* v. *State* (1919), 188 Ind. 579, 125 N. E. 211. The affidavits at bar each charged a violation in substantially the language of the statute defining the offense and the acts constituting it. They were therefore sufficient to withstand a motion to quash. *Smith* v. *State* (1924), 194 Ind. 624, 144 N. E. 141; *Kistler* v. *State* (1921), 190 Ind. 149, 129 N. E. 625; *Anderson* v. *State* (1924), 195 Ind. 329, 145 N. E. 311; *Faulkner* v. *State* (1923), 193 Ind. 663, 141 N. E. 514; *Vinnedge* v. *State* (1906), 167 Ind. 415, 79 N. E. 353; *State* v. *Sutton* (1908), 170 Ind. 473, 84 N. E. 824.

An issue of fact presented by a general denial to a motion by each appellant to suppress certain evidence was heard by the court and overruled. The evidence thus sought to be suppressed was offered at the trial, and, over appellants' objection, the same was admitted and was made a. cause for a new trial. The evidence submitted to the court at the hearing upon the motions, and the evidence given at the trial in each case was brought into the record by bills of exceptions. The error assigned by each appellant upon the overruling of his motion for a new trial calls

in review the ruling of the court on his motion to suppress as well as the ruling admitting the evidence at the trial.

The questioned evidence was a still, some white-mule whisky, and what is known as "mash," also what was said and done at the place and at the time three prohibition officers and another person who was not an officer took possession of the articles located on the bank of the Wabash river. The objection to the evidence was, in substance, that the place where the articles were found was occupied by each of the appellants as a residence with the permission of the landowner's tenant; that the officers seized the articles by force, arrested appellants, and searched the premises, without authority of a search warrant or warrant for the arrest of either of the appellants.

In substance, the evidence showed that for three or four years, during the spring and summer months, Shade, by permission of one he supposed was a 5. tenant of the landowner, had occupied approximately fifteen by twenty feet of ground located below Vincennes in Knox county, on the bank of the Wabash river, about thirty feet from the water, as a fishing camp; that Bingham, about a month prior to the day the articles in question were found, joined Shade as a camper. The fifteen or twenty feet was cleared of brush and shrubbery, and was accessible to persons only on foot. It was surrounded by a dense thicket. The owner of the land had given the officers permission to go upon the premises, but they had not obtained permission from one who claimed to be the owner's tenant. There was a conflict in the evidence of the owner and tenant as to whether the tenancy covered this particular thicket. The testimony on this subject is such that the trial court might have found that the tenancy ex-

tended only to the cleared land, and hence we must adopt that view. At the time of the raid, the camp furniture consisted of a big aluminum kettle, two or three small stewers, a coffee pot, a gasoline stove, blankets, a tarpaulin, eight gallons of whisky, six barrels of mash in process of fermentation, and a still in operation with whisky running out of the coil. The camp shelter was leaning trees with vines trained thereon. No house, hut, tent or other structure was there. The officers testified that they could smell the odor from the boiling mash about 150 or 200 yards away; that they were about twenty or thirty feet from the cleared space when they saw the still. They then surrounded the place, drew and pointed their revolvers at appellants, searched the premises, seized the articles and arrested them without a warrant of any kind.

The foregoing recitals indicate generally the evidence disclosed by the record in each of these cases bearing upon the question of whether or not either of these appellants was the victim of an unreasonable search or seizure in violation of their constitutional rights.

"To be secure, in their persons, houses, papers, and effects, against unreasonable search and seizure" (Art. 1, §11, Indiana Constitution) is a constitutional warrant which must be respected and obeyed alike by all law enforcing officers and the people generally of this state. In the instant cases, these appellants were undoubtedly violating a law in reasonably plain view of officers engaged in enforcing that law, when at a place where they had a right to be by permission of the person having the possessory right.

Under the circumstances disclosed by the record in each of these cases, we hold that the search and seizures in question made by the officers was not unreasonable or a violation of the constitutional rights of these appellants.

Having determined that the court did not err in over-ruling the motion to suppress evidence, or in admitting the questioned evidence, it follows that the verdict 6. of the jury was supported by sufficient evidence, and was not, for that reason, contrary to law. Judgment in each case affirmed.